IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  11-cv-00005-WYD

LIEN HUYNH,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's claim for disability insurance benefits ["DIB"] and for supplemental security income ["SSI"] payments.  For the reasons stated below, this case is reversed and remanded for further fact finding.

I.    <u>INTRODUCTION AND BACKGROUND</u>

Plaintiff originally alleged that she became disabled on May 26, 2007, but later amended her onset date to June 1, 2007.  (Transcript ["Tr."] 11, 34, 198, 205.)  She filed her applications for DIB and SSI on February 1, 2008.  (*Id.* 198-208.)  Her claims were denied by written decision of an administrative law judge ["ALJ"] on April 20, 2010.

Plaintiff, born in December 1955, was 52 years old on her alleged onset date and 54 years old on the date of the ALJ's decision.  She alleged that she became disabled due to hypertension, leg cramps, internal hemorrhoids, memory loss, depression, and

low self esteem. (Tr. 251.) She further alleged that it is hard for her to concentrate and she suffers from fatigue, stomach problems, and bleeding caused by the hemorrhoids. (*Id.* 15.) Plaintiff completed the third grade in Vietnam. (*Id.* 250, 255.) She escaped from Vietnam as a "boat person" and immigrated to the United States in 1978. (*Id.* 324.) Plaintiff became a United States citizen, and worked in the past as an assembler and a touch up screener. (*Id.* 252, 257.) Her work record shows employment from 1979 until 2005. (*Id.* 209-10.)

The ALJ held three hearings regarding Plaintiff's claims. No testimony was taken at the October 7, 2009 hearing. (Tr. 25-30.) The ALJ took testimony at two hearings, on January 26, 2010, and on March 16, 2010. (*Id.* 31-83.) On April 20, 2010, the ALJ issued a decision in which he concluded at step five of the sequential evaluation required by law that Plaintiff was not disabled under the Act. (*Id.* 8- 20.)

More specifically, the ALJ found at step one that Plaintiff met the insured status requirements of the Social Security Act ["the Act"] through March 31, 2010. (Tr. 14, Finding 1). He also found that Plaintiff had not engaged in substantial gainful activity since June 1, 2007. (*Id.*, Finding 2).

At step two, the ALJ determined that Plaintiff's dysthymic disorder and generalized anxiety disorder were "severe" impairments. (Tr. 14, Finding 3). He found that Plaintiff's "high blood pressure and internal hemorrhoids are established medical impairments but the evidence does not show that these have had more than a minimal effect" on her ability to perform basic workplace activities. (*I*d. 17.) Finally, he found that Plaintiff's "reports of back or musculoskeletal pain and leg cramps" as well as her

report of headaches, muscle pain and seizures were not supported by any objective medical findings and, thus, were not established as impairments. (*Id.*)

At step three, the ALJ considered the listings and determined that Plaintiff's impairments, alone or in combination, did not meet or equal a listed impairment. (*Id.* 15, Finding 4.) In so finding, he relied on the "the assessment of DDS psychologist Dr. Gayle Frommelt (Exs. 1F, 2F)" which he found was "a medical opinion that the claimant does not meet or equal any listing of impairment." (Tr. 15.)

The ALJ then assessed Plaintiff's residual functional capacity [RFC"], finding that Plaintiff retained the RFC to perform medium work where the ability to communicate in English was not an essential feature of the job. (Tr. 15, Finding 5.) He also found Plaintiff can understand, remember, and carry out simple instructions and follow simple routines, where she has no more than minimal interaction with the public. (*Id.*) In so finding, the ALJ stated that Plaintiff was "less than fully credible with respect to her reports of pain and limitation and their effect on her ability to work." (*Id.* 18.) This was due to "the relative absence of medical treatment despite the recommendations" of her doctors" and inconsistencies in the testimony of Plaintiff and her son and in Plaintiff's reports to the SSA and to her doctors. (*Id.*)

At step four, the ALJ found that Plaintiff could not perform her past work as an electronics assembler because the work exceeded Plaintiff's RFC. (Tr. 18, Finding 6).

At step five, the ALJ noted that Plaintiff was a person closely approaching advanced age with limited education and limited English skills. (Tr. 19, Findings 7 and 8). Despite this, he found that Plaintiff could perform other work that exists in significant

numbers in the national economy, including the jobs of dishwasher, janitor, and hand packager.  (*Id.* 19-20, Finding 10).  As such, Plaintiff was found not to be disabled under the Act.  (*Id.* 20, Finding 11.)

The Appeals Council declined review on October 29, 2010.  (Tr. 1-3.)  Plaintiff filed a timely complaint in this Court, and the case is ripe for review.

Plaintiff argues that the matter should be remanded due to the application of incorrect legal standards by the ALJ and because the ALJ's conclusions are not supported by specific evidence.  More specifically, she argues that the ALJ improperly evaluated her mental impairments and failed to properly weigh the medical evidence.  Plaintiff also argues that the ALJ improperly assessed her credibility and subjective complaints.  Further, she asserts that the ALJ failed to properly evaluate the cross-examination of the vocational expert who testified at the hearing, and that he denied Plaintiff a fair trial when he failed to allow development of the medical record and prevented her from completing her testimony.  Finally, she asserts that the ALJ did not discuss uncontroverted evidence that he rejected and failed to give proper weight to the fact that Plaintiff was approaching old age.  I address these arguments below.

II.    ANALYSIS

A.    Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is

evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

B.    Whether the ALJ's Decision Is Supported by Substantial Evidence

1.    Whether the ALJ Erred in Regard to the RFC and Weighing of the Medical Evidence

As noted above, the ALJ found Plaintiff retained the RFC to perform medium work where the ability to communicate in English was not an essential feature of the job. (Tr. 15, Finding 5.)  He also found that Plaintiff can understand, remember, and carry out simple instructions and follow simple routines, where she has no more than minimal interaction with the public. (*Id.*)

In discussing the evidence related to the RFC, the ALJ stated that he gave the physical limitations opined to by consultative examiner Dr. Qutub "great weight" and that he included those limitations in the RFC. (Tr. 16.)  Dr. Qutub examined Plaintiff in May 2008 and diagnosed major depression, rectal bleeding with a history of hemorrhoids, chronic intermittent low-back pain, hypertension, Dyslipidemia, and chronic intermittent

abdominal pain.  (*Id.*)  He opined that Plaintiff could stand or walk for six hours in an

eight-hour workday and placed no limitations on her ability to sit, lift, or carry.  (*Id.* 340.)

The AlJ found that Dr. Qutub's opinion is supported by his detailed examination,

is consistent with the overall weight of the evidence, and "[n]o other medical source has

opined to any physical limitations of function during the period at issue."  (*Id.*)  As to

treating physician Dr. Barlow's opinion that Plaintiff was limited to sedentary work, the

ALJ said that he gave this opinion "less weight."  (*Id.*)  He further stated that the opinion:

> was rendered more than two years prior to the claimant's alleged onset
> date of disability and is not supported by medical findings.  Dr. Barlow
> mentioned only that the claimant has hypertension, leg cramps at night,
> and internal hemorrhoids. There are no medical signs or laboratory
> findings to support the presence of leg cramps.

(*Id.*)

I find error with the ALJ's weighing of Dr. Barlow's opinion.  Plaintiff asserts that

Dr. Barlow was a treating physician, and this is not contested by the Commissioner.

The Commissioner acknowledges in its Response Brief that controlling weight must be

given to a treating physician's opinion regarding the nature and severity of an

impairment(s) if the opinion is well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in the record.  *See* 20 C.F.R. § 404.1527(d)(2); SSR 96-2p, 1996 WL 374188

(1996).  Nonetheless, the Commissioner argues that the ALJ reasonably gave "less

weight" to Dr. Barlow's 2005 opinion based on the sparse treatment notes and the fact

that Dr. Barlow's opinion limiting Plaintiff to sedentary work was rendered more than

two years prior to the alleged onset date of disability and is not well supported by medical findings.  (Def.'s Resp. Br. at 14.)

The Commissioner's argument fails to acknowledge the legal analysis that is required as to treating physicians.  Under Tenth Circuit law, "the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR)", the ALJ is required to "complete a sequential two-step inquiry" in regard to medical opinions of a claimant's treating physician, "each step of which is analytically distinct."  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, *i.e.*, is to be accorded 'controlling weight,' on the matter to which it relates."  *Id.*  The ALJ did not analyze whether Dr. Barlow's opinion as a treating provider was entitled to controlling weight.

"Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned."  *Krauser*, 638 F.3d at 1330.  "If this is not done, a remand is required."  *Id*.  *Krauser* cited the relevant ruling, which explains:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported . . . or is inconsistent with the other substantial evidence in the case record *means only that the opinion is not entitled to 'controlling weight', not that the opinion should be rejected.*  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§] 404.1527 1nd 416.927. *In many cases, a*

-7-

> *treating source's medical opinion will be entitled to the greatest weight and*
> *should be adopted, even if it does not meet the test for controlling weight.*

*Id.* (quoting SSR 96-2p, 1996 WL 374188, at *4) (emphasis added). Thus, a deficiency

as to the conditions for controlling weight *raises the question* of how much weight to

give the opinion, it does not resolve the latter, distinct inquiry." *Id.* (emphasis in

original).

In *Krauser*, the Tenth Circuit found that the ALJ's assessment of a treating

physician's opinion was "patently inadequate for the distinct reason that it ends halfway

through the required two-step analysis:  the ALJ simply concluded that 'Dr. Lambert's

opinion ... cannot be given controlling weight' and then *said no more about it." Id.*

(emphasis in original).  Here, however, the ALJ did not even discuss or consider the first

step—whether Dr. Barlow's opinion about sedentary work, in whole or in part, is entitled

to controlling weight, let alone the second step.  Further, the ALJ did not consider the

relevant factors in determining what weight to give the opinion and the weight given to

the opinion was unclear.  While the ALJ stated he was giving the opinion of Dr. Barlow

"less weight", it appears that he gave it no weight.  The Tenth Circuit has made clear

that "an ALJ must give good reasons . . . for the weight assigned to a treating

physician's opinion,' that are 'sufficiently specific to make clear to any subsequent

reviewers the weight the adjudicator gave to the treating source's medical opinions and

the reason for that weight.'" *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir.

2004) (quotation omitted).

Based on the foregoing, I find that this case must be remanded for a proper assessment and weighing of Dr. Barlow's opinions.  The proper weighing of Dr. Barlow's opinion is particularly important in this case given the fact that the vocational expert testified that a restriction to sedentary employment (as opined to by Dr. Barlow) combined with Plaintiff's uncontested mental problems would bar all employment.  (Tr. 358.)

I also find that it was improper to reject Dr. Barlow's finding that Plaintiff was limited to sedentary work on the basis it was not supported by medical findings without further development of the record.  The fact that a treating doctor does not adequately document why he or she found that a claimant has severe functional limitations, such as the ability to perform only sedentary work, is not a ground for the ALJ to simply discount the doctor's opinion .  *See Daniell v. Astrue*, No. 09-2310, 2010 WL 2588174, at *4 (10th Cir. June 29, 2010) (unpublished)[1]; *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (citing 20 C.F.R. § 404.1512(e)(1)).  Rather, the ALJ should give the treating physician[] an opportunity to provide the reasons for the limitations he or she assessed.  *Daniell*, 2010 WL 2588174, at *4.  The *Daniell* court noted on this issue:

> In *Robinson*, we remanded the case under virtually identical circumstances when the ALJ in that case stated that the treating physician's records did not give a reason for his opinion that the claimant in that case was unable to work. See *Robinson*, 366 F.3d at 1084. "If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician to determine if additional needed information is readily available." Id. (citing 20

---

[1]  I cite this and the other unpublished opinions in this Order because the cases have persuasive value with respect to material issues in the case.  10th Cir. R. 32.1(A).

> C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1) . . . .It is the ALJ's responsibility to seek additional evidence from a treating physician under these circumstances.

*Id.* (citing *Robinson*, 366 F.3d at 1084); *see also Maes v. Astrue*, 522 F.3d 1093 (10th Cir. 2008).

The duty to develop the record also applies to Dr. Barlow's finding that Plaintiff suffers from leg cramps.  This finding was rejected by the ALJ because it was not shown by any objective medical findings.  (Tr. 17).  However, the initial intake form on which the diagnosis was stated does not specify how this diagnoses is reached.  Accordingly, the ALJ should have contacted Dr. Barlow for clarification on this issue.  *See Carter v. Astrue*, 73 F.3d 1019, 1022 (10th Cir. 1996) ("the existence of Dr. Baum's diagnosis required the ALJ to develop the record concerning" that diagnosis).

My finding that Dr. Barlow's opinion and findings were not properly weighed will require that the physical RFC be reassessed on remand.  The ALJ must first determine what weight to give Dr. Barlow's opinion as a treating physician under the proper standard before he can determine what weight to assign consultative examiner Dr. Qutub's opinion or the other medical opinions in the case.  On remand, the ALJ should take into account that "'[w]hen a treating [source's] opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other [sources'] reports to see if they outweigh the treating [source's] report, not the other way around.'" *Valdez v. Barnhart*, No. 01-1531, 2003 WL 366751 at *2 (10th Cir. Feb. 20, 2003) (unpublished) (quoting *Goatcher v. United States Dep't of Health and Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1994)).  Since the ALJ's opinion did not comply with the legal requirements as

to weighing the evidence, the physical RFC is not supported by substantial evidence, and this must be reassessed after the evidence is properly weighed.

I next address the mental RFC and the ALJ's weighing of the medical evidence related to same.  On that issue, the ALJ stated that he gave "greatest weight" to the opinion of non-examining DDS psychologist Dr. Frommelt, finding it was "based on her review of the medical evidence" [including the reports of Drs. Lam, Bradley, and Qutub]; is consistent with that evidence, and with the overall record; and "[n]o medical source has opined to any greater mental limitations of function."  (Tr. 18.)

Dr. Frommelt reviewed the medical file on June 14, 2008.  She did not examine Plaintiff.  Dr. Frommelt concurred with the diagnoses of Dysthymic Disorder and Generalized Anxiety Disorder made by Drs. Lam and Bradley.  (Tr. at 313, 315).  She found in Section I of the mental RFC form of the agency entitled "Summary Conclusions" that Plaintiff was moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, and the ability to interact appropriately with the general public.  (*Id.* 306-07.)  In Section III of the form entitled "Functional Capacity Assessment", Dr. Frommelt stated:  "Clmt can follow simple instructions, sustain ordinary routines and make simple work-related decisions; can respond appropriately to supervision, coworkers but must have minimal to no interaction with the general public, can deal with changes in a routine work setting.  (*Id.* 308).  Finally, as to the rating of functional limitations, Dr. Frommelt found that Plaintiff was mildly limited in restriction of activities of daily living, moderately limited in maintaining

social functioning, and moderately limited in difficulties in maintaining concentration persistence or pace.  (*Id.* 320.)

It appears from the RFC that the ALJ adopted Dr. Frommelt's opinion in the "Functional Capacity Assessment" of the mental RFC form.  I find, however, that the ALJ erred in relying on Dr. Frommelt's functional assessment because it does not include all the mental limitations noted in the record.  First, it does not even include the fact that Dr. Frommelt found Plaintiff to have moderate limitations in maintaining concentration, persistence or pace.  The Tenth Circuit has made clear that the existence of a moderate impairment is not the same as no impairment at all, and that moderate impairments must be addressed by the ALJ in connection with the RFC. *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007); *Confere v. Astrue*, No. 06-4217, 2007 WL 1196520, at *3 (10th Cir. April 24, 2007) (unpublished).  Indeed, the Social Security Administration has itself recognized that a moderate impairment means that the individual's capacity to perform activity is impaired.  POMS 24510.063, http://policy.ssa.gov/poms.nsf/lnx/0424510063.  Consistent with this, the Tenth Circuit has noted that moderate impairments may decrease a claimant's ability to perform work.  *Bowers v. Astrue*, No. 07-5114, 2008 WL 794853, at *3 (10th Cir. March 26, 2008) (unpublished).

Second, Dr. Frommelt's opinion does not appear to address all the findings of Drs. Lam and Qutub.  In 2005, Dr. Lam diagnosed Plaintiff with Adjustment Disorder with anxiety as well as hypertension, backaches and hemorrhoids, and determined that

Plaintiff had a global assessment of functioning ["GAF"] score of 58. (*Id.* 329.)[2]  In February 2007, Dr. Lam completed a mental RFC form of Plaintiff finding that she had moderate impairments in understanding and remembering complex instructions, carrying out complex instructions, and making judgments on complex work-related decisions. (*Id.* 332.)  This appears to be generally consistent with the moderate impairments found by Dr. Frommelt.  Dr. Lam also noted that Plaintiff complains of constant headaches, muscle pain and seizure and that these symptoms can affect her work performance. (*Id.*)

Plaintiff was seen by Dr. Lam again on October 8th and October 17th of 2009.  Dr. Lam diagnosed a Dysthymic Disorder and determined Plaintiff's GAF score to be 53, on the low end of the scale for moderate symptoms. (Tr. 351).  Dr. Lam noted in his October 2009 report under "current presenting problems" that "Ms. Huynh presents with Dysthymia symptoms…this disorder is characterized by an overwhelming yet chronic state of depression, exhibited by a depressed mood for most days, for at least 2 years." (*Id.* at 350.)  He found that "[c]oncentration problems are probable with Ms. Huynh being distractible, preoccupied, and inattentive.  This may cause her to miss important cues which may reduce her judgment and coping ability." (*Id.* 350.)  Dr. Lam also found that "[d]ue to a lack of self-confidence, she may be indecisive and have problems with

---

[2]  "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning."  *Langley v. Barnhart*, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004).  A GAF score between 51 and 60 indicates "'moderate symptoms,' such as a flat affect, or 'moderate difficulty in social or occupational functioning'".  *Wilson v. Astrue*, 602 F.3d 1136, 1142 n. 3 (10th Cir. 2010) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Text Revision 4th ed. 2000 at 34).

decision-making" and that her "chronic depression has affected the patient [sic] cognitive, social, and occupational functioning." (*Id.*)

The ALJ did not state what weight, if any, he gave to the opinions of Dr. Lam. Instead, the ALJ merely noted that Dr. Lam "concluded that the claimant was impaired in social or occupational functioning, but did not opine to any specific limitations" and that he assigned a GAF of 58. (Tr. 17.) The ALJ ignored the fact that Dr. Lam made diagnoses and medical findings about the impact of Plaintiff's depression and other impairments, *i.e.*, statements about Plaintiff's condition or impairments, that had to be taken into account by the ALJ in connection with the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). He also ignored the lower GAF score of 53 assigned by Dr. Lam to Plaintiff in 2009. An ALJ errs in rejecting medical findings in the absence of conflicting evidence. (*Id.*)[3] Further, to the extent that the ALJ believes Dr. Lam's opinion is not sufficiently detailed as to how Plaintiff is impaired in social or occupational functioning, the ALJ is required to contact Dr. Lam on this issue for clarification rather than simply discount his opinion. See *McGoffin*, 288 F.3d at 1252.

The ALJ also erred with regard to Dr. Lam because there is no indication in his decision that he evaluated the relevant factors that must be considered in weighing medical evidence and he did not state what weight, if any, he gave to Dr. Lam's findings. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it") (citing 20 C.F.R. § 416.927(f)(2)(ii)); *Doyle v. Barnhart*, 331

---

[3]  The findings in Dr. Lam's 2009 opinion also do not appear to be addressed by Dr. Frommelt.

F.3d 758, 764 (10th Cir. 2003) (discussing the factors that must be considered in weighing a medical opinion). This must be addressed on remand. On remand, the ALJ should take into account the fact that Dr. Lam observed Huynh over a period of four (4) years and was able to evaluate Plaintiff and conduct the examinations in her native Vietnamese. He also appears to have performed a thorough mental health evaluation regarding her current mental status.[4]

Dr. Frommelt's opinion as well as the RFC assessment also do not address consultative examiner Dr. Qutub's mental findings. Dr. Qutub opined that Plaintiff's depression "appears to have real manifestations with her performance", that Plaintiff has difficulties with lethargy and memory problems which were likely due to her difficulties sleeping, and that Plaintiff's low affect and apparent major depression would also likely affect interpersonal relations in a work place environment.[5]

While the ALJ noted some of Dr. Qutub's mental findings, he erred as he did not discuss why he did not include those findings in the RFC. *See Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996) (generally, the ALJ is not entitled to reject a doctor's opinions without adequate justification or to substitute his own medical judgment for that of mental health professionals). This is particularly troubling as the ALJ chose to give weight to other findings of Dr. Qutub. *See Carpenter v. Astrue*, 537

---

[4] In his evaluations, Dr. Lam made clinical interviews/observation, reviewed medical notes, and conducted a mental status examination, WAIS-III subtests, Vietnamese Beck Depression Inventory, Vietnamese Burn Anxiety Inventory, Vietnamese Burn Depression Inventory, TAT, and Bender Gestalt Test. (Tr. 324.)

[5] The finding in the RFC that Plaintiff should have no contact with the public does not address this last concern, as interpersonal relationships in the work place would include relationships with coworkers and supervisors.

F.3d 1264, 1265 (10th Cir. 2008) (the ALJ may not "'pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.'") (quotation omitted).   Further, while the ALJ noted in passing that Dr. Qutub's specialty is not in mental health, he did not state what weight, if any, he gave Dr. Qutub's findings regarding Plaintiff's mental impairments, or show that he evaluated the relevant factors regarding Dr Qutub's opinions.   (*Id.*)   This also was error that must be remedied on remand.

Finally as to Dr. Qutub, the ALJ ignored altogether Dr. Qutub's recommendation that Plaintiff undergo a neuropsychiatric evaluation.   He also ignored Dr. Bradley's similar recommendation for a neurological examination.   This also must be addressed on remand.   [T]he regulations require the ALJ to 'consider all evidence in [the] case record when [he] makes a determination or decision whether [claimant is] disabled,' 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3), and this court requires the ALJ to discuss 'the significantly probative evidence he rejects'".   *Carpenter*, 537 F.3d at 1266 (quoting *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)).   The ALJ must assess whether a further consultative exam should be ordered based on this evidence, keeping in mind that such an exam should be ordered "when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability."   *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997).[6]

---

[6] Also on remand, the ALJ should consider the opinion expressed in Joseph Blythe M.A.C.R.C.'s report.

2.    Whether the ALJ Erred in Assessing Plaintiff's Credibility

The ALJ found that Plaintiff "is less than fully credible with respect to her reports of pain and limitation and their effect on her ability to work." (Tr. 18.)  The most significant factor the ALJ noted in reaching that conclusion "is the relative absence of medical treatment despite the recommendations of her treating and examining doctors, such as Dr. Barlow and Dr. Qutub." (*Id.*)  The ALJ also relied on the fact that there were inconsistencies in Plaintiff's and her son's testimony and in the written reports. (*Id.*)  I find that the ALJ erred in assessing Plaintiff's credibility and that this must be reassessed on remand.

I first agree with Plaintiff that the ALJ did not properly consider her allegations of pain and fatigue.  First, there is nothing in the ALJ's decision to indicate that the ALJ followed the correct pain analysis and considered the appropriate factors as set out in *Luna v. Bowen*, 834 F.2d 161, 163-66 (10th Cir. 1987).  Instead, the ALJ simply found that Plaintiff's reports of back and musculoskeletal pain and fatigue are not shown by any objective medical findings. (Tr. 17.)  This was error.  The Social Security Administration has held that "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms may have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."  SSR 96-7p, 1996 WL 374184, at *1 (July 2, 1996/ ); *see also Gatson v. Bowen*, 838 F.2d 442, 447 (10th Cir. 1988) ("[O]bjective medical evidence of disabling pain need not consist of concrete physiological data alone but can consist of a medical doctor's clinical assessment as well. . . ."); *Boyer v. Astrue*,

No. 07-cv-00994-RPM, 2009 WL 353523, at *1 (D. Colo. Feb. 12, 2009) (unpublished) ("[P]ain and fatigue are not necessarily identifiable or measurable by objective diagnostic tests".).

Further and contrary to the ALJ's findings, there was evidence in the record that substantiated the complaints of pain and fatigue. Dr. Lam found that Plaintiff presented with pain, seizure and headaches. (*Id.* 329.). Dr. Qutub diagnosed chronic intermittent low-back pain as well as chronic intermittent abdominal pain. (*Id.* 339-340.) The back pain appears to be related to a car accident in 1999 that Plaintiff was in. (*Id.* 325.) Dr. Qutub stated that the abdominal pain may be a manifestation of Plaintiff's depression or anxiety. (*Id.* 340.) Thus, the ALJ's finding on this issue is not supported by substantial evidence.

The ALJ also discounted Plaintiff's complaints of headaches on the basis that there was no objective medical evidence to substantiate this impairment. However, there do not appear to be objective medical tests for evaluating migraines/headaches. Accordingly, there is no requirement that an impairment such as migraines be proven through objective medical findings. *See, e.g., Thompson v. Barnhart,* 493 F. Supp. 2d 1206, 1215 (S.D. Ala. 2006); *Wiltz v. Barnhart,* 484 F. Supp. 2d 524, 532 (W.D. La. 2006); *Stebbins v. Barnhart,* No. 03-C-0117-C, 2003 WL 23200371, at *2 (W.D. Wis. Oct. 21, 2003) (unpublished); *Diaz v. Barnhart*, No. Civ.A 01-CV-0525, 2002 WL 32345945, at *6 (E.D. Pa. March 7, 2002) (unpublished); *Ortega v. Chater*, 933 F. Supp. 1071, 1075 (S.D. Fla. 1996); *Federman v. Chater,* No. 95 Civ. 2892, 1996 WL

107291, at *2 (S.D.N.Y. March 11, 1996) (unpublished).  Accordingly, these impairments must be reassessed on remand.

I also find error with the ALJ's decision to discount Plaintiff's credibility because Plaintiff did not seek "medical treatment at any point during the period at issue in this decision except for visits to Dr. Barlow in February and December, 2009. . . ."  (Tr. 16.) The ALJ did not conduct the proper analysis on this issue.  The Tenth Circuit has stated that "the law requires an ALJ to apply a particular analysis anytime he relies on a failure to pursue treatment as a basis to find that claimant is not disabled.  *Fuller v. Astrue*, No. 10-2037-JWL, 2011 WL 209527, at *17 (10th Cir. Jan. 21, 2011) (unpublished) (citing *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993)).  "Before relying on such a failure to pursue treatment, 'the ALJ should consider (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse.'"  *Id*. (quotation and internal quotation marks omitted).  A claimant's inability to afford treatment may constitute justifiable cause for failing to comply with prescribed treatment.  *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *4 (10th Cir. Dec. 8, 2004) (unpublished).  Thus, the ALJ must assess whether the claimant lacked the financial ability to pursue treatment or medication or determine if there is some other explanation for failing to pursue treatment.  *See* SSR 96-7p, 1996 WL 374186, *7-8 (1996).

In this case, the record shows that Plaintiff is indigent.  Indeed, while the ALJ acknowledged the fact that Plaintiff told Dr Barlow she had lost her insurance, he found

that this was "not very persuasive" as there are programs for indigent medical care which the claimant apparently has not [used] [sic].  (*Id.* 17.)  He conducted no further analysis on the issue, and did not question Plaintiff on this issue.  It was impossible to know whether Plaintiff even knew about the programs for indigent medical care relied on by the ALJ.  On remand, the ALJ must conduct the proper analysis required by law and determine whether there is any explanation for Plaintiff's failure to pursue more medical treatment.

Finally on remand, in reassessing Plaintiff's credibility the ALJ should take into consideration Plaintiff's long history of gainful employment.  Plaintiff managed to stay gainfully employed in the United States for twenty six (26) years despite having only a third grade education from Vietnam and her difficulties with English.  Further, the ALJ should consider Plaintiff's efforts to find employment after her position with Ecosphere was terminated.  The ALJ's finding that Plaintiff "demonstrated a loss of interest in work" does not appear to be consistent with that evidence.  The ALJ must also consider the fact that Plaintiff is a person closely approaching advanced age.  Finally, the ALJ's decision should reflect that he considered the testimony of Plaintiff's son in assessing Plaintiff's credibility.  *See Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006).

3.   Whether the ALJ Erred in Connection with Development of the Record and in Regard to Cutting Off Plaintiff's Testimony

Plaintiff also argues that the ALJ denied her a fair trial when he failed to allow development of the medical record and prevented her from completing her testimony.  As noted earlier, the ALJ has a duty to fully and fairly develop the record as to material

issues.  *Baca v. Dept. of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993).

In other words, a social security hearing is "nonadversarial in nature, and thus the ALJ

bears responsibility for ensuring that 'an adequate record is developed during the

disability hearing consistent with the issues raised' in that hearing"  *Grogan v. Barnhart*,

399 F.3d 1257, 1264 (10th Cir. 2005).

In the case at hand, Plaintiff's counsel asked at the hearing whether he could

obtain clarification from Dr. Lam as to Plaintiff's mental impairments.  The ALJ appeared

to reject this request.  The following exchange occurred on this issue between Plaintiff's

counsel and the ALJ:

> ALJ: So how you going to establish disability unless you--
>
> ATTY: We've got Dr. Lamb who interviewed her in Vietnamese, who gave her a 53.
>
> ALJ: Yeah. That's moderate. And did you say that her concentration was poor, whatever that means.
>
> ATTY: Would be helpful--Judge, would it be helpful if I perhaps could get something more detailed from Dr. Lamb? Because I think, as you can see, this is -- it's a struggle communicating in-- she can--
>
> ALJ: I'm not opening this up to a circus, Counsel.
>
> ATTY: I'm not asking that, Judge.
>
> ALJ: No, we're not going to do that.

(Tr. at 52-53.)

I find that the ALJ's rejection of counsel's request to supplement the record with

further documentation from Dr. Lam was error, particularly given the fact that the

hearing was going to be rescheduled and the ALJ was not about to make his decision.

This error is particularly egregious since the ALJ rejected  Dr. Lam's opinion that

Plaintiff was impaired in social or occupational functioning because he did not opine to

any specific limitations.  As noted in Section II.B.1, *supra*, the ALJ could not simply

discount Dr. Lam's opinions on this basis without further development of the record.  It

was the ALJ's duty, not Plaintiff's counsel's duty, to develop the record on this issue.

The ALJ's error in failing to develop the record by the ALJ was exacerbated by the fact

that the ALJ also declined to allow Plaintiff's counsel to supplement the record.

Plaintiff also argues that the ALJ denied Plaintiff a fair trial when he prevented

her from completing her testimony.  Specifically, Plaintiff asserts that the ALJ cut her off

when she attempted to answer his question, "Q Do you ever cry when you wouldn't

have cried before back when you were able to work?  (Tr. at 52.) Instead of allowing her

to answer, the ALJ concluded the hearing stating, "Okay, Counsel we're going to

reschedule." (*Id*.)  Then at the rescheduled hearing, instead of allowing her to complete

her answer, the ALJ asked Plaintiff if she was willing to forego any further testimony so

that her son could testify.  (*Id*. at 56.)  I find that this also was error.  Even the

Commissioner agrees that the ALJ should not have asked Plaintiff whether she was

willing to preclude further testimony to allow lay witness testimony.  This must be

addressed on remand, and Plaintiff's testimony should be completed.[7]

III.   CONCLUSION

Based upon the foregoing, I find that the ALJ did not properly weigh the treating

sources' opinions as well as the other medical evidence.  This impacts the RFC finding,

---

[7]  I reject the Commissioner's argument that Plaintiff's counsel waived this issue.

which must be reassessed after the medical evidence is properly weighed.  I also find

that the ALJ erred in several respects in evaluating Plaintiff's credibility, and that he did

not fully develop the record with regard to the evidence and Plaintiff's testimony.

Accordingly, I find that this case must be remanded to the Agency for further fact finding

on these and the other issues discussed in this Order.  It is therefore

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner

for further fact finding pursuant to sentence four in 42 U.S.C. § 405(g).

Dated March 23, 2012

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge